UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | }<br>}<br>} Case No. 4:19-CV-00037 |
| Plaintiff, | }<br>} |
| vs. | } COMPLAINT<br>} |
| DIETRICH KILPATRICK, | }<br>} |
| Defendant. | }<br>} |

Plaintiff GREAT AMERICAN INSURANCE COMPANY (hereinafter "Great American" or "Plaintiff"), for its complaint against Defendant DIETRICH KILPATRICK ("Kilpatrick" or "Defendant"), states as follows:

## I. JURISDICTION

1. Great American is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

2. Defendant Dietrich Kilpatrick ("Kilpatrick") is an individual who resides in Dover, in Craven County, North Carolina.

3. The parties are completely diverse in citizenship.

4. Plaintiff Great American is seeking damages in an amount that exceeds $75,000.

5.     This Court has federal diversity jurisdiction under 28 U.S.C. §1332, due to the fact that complete diversity of citizenship is present and the amount in controversy is in excess of $75,000.

## II.     PARTIES

6.     Kilpatrick owned a farming operation on which he produced Flue Cured Tobacco, Corn, and Soybeans in Craven County, North Carolina in 2016.

7.     A division of Great American is engaged in the business of federally-reinsured crop insurance, which is subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. Section 1501, *et. seq.*, and to applicable federal rules and regulations related thereto, including those found in Chapter IV of Title 7 of the Code of Federal Regulations.  Great American is also party to a Standard Reinsurance Agreement ("SRA") with the government-established Federal Crop Insurance Corporation ("FCIC"), which further defines the reinsurance and regulatory relationship between those entities.

## III.     VENUE

8.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because Defendant's crops were located in Craven County, and a substantial part of the events giving rise to the claim occurred within this judicial district.  Venue is also proper pursuant to 28 U.S.C. §1391(b)(1) because Defendant is a natural person domiciled in Craven County.  Venue is also proper in the Eastern Division pursuant to Local Civil Rule 40.1.

## IV. FACTUAL BACKGROUND OF THE FEDERAL CROP INSURANCE PROGRAM

9. FCIC reinsures the Multi-Peril Crop Insurance ("MPCI") policies at issue in this case, which are codified in the Code of Federal Regulations and are federal law. FCIC is a federal agency established by Congress in the Federal Crop Insurance Act "(FCIA") to carry out the purposes of the FCIA. FCIC regulates premiums, authors and approves policy terms, defines the rights and obligations of the insurer and insured, mandates the terms of dispute resolution procedures under subject policies, and reinsures the policies private insurers issue to farmers. See 7 U.S.C. §1501, *et seq.* Pursuant to 7 U.S.C. §6933, the United States Department of Agriculture Risk Management Agency ("RMA") administers FCIC, and FCIC and RMA operate in tandem.

10. The 2016 policy terms at issue are codified as federal regulations, respectively, in the 2016 edition of 7 CFR Part 457, with the Basic Provisions codified at 7 CFR §457.8, the Coarse Grains Crop Provisions (which cover corn and soybeans) codified at 7 CFR §457.113, and the Tobacco Crop Insurance Provisions codified at 7 CFR §457.136.

## VI. FACTS AND ALLEGATIONS

11. As evidence of his understanding and intent to be bound by the terms of the policy, Kilpatrick executed a Multiple Peril Crop Insurance and Supplemental Product Application and Policy Transfer Form with Great American on or about February 29, 2016 (attached hereto as Exhibit A).

12. Great American issued Multiple Peril Crop Insurance ("MPCI") Policy No. 2016-NC-084-1091266 ("1091266") to Kilpatrick for crop year 2016, which provided coverage for his

3

crops in several counties in North Carolina, including his Corn, Soybean, and Flue Cured Tobacco crops in Craven County, North Carolina. See Declaration of Coverage, attached as Exhibit B.

13. A copy of the Basic Provisions (see 7 CFR §457.8) that Defendant Kilpatrick received for Policy No. 1091266, reproduced on an industry-standard form identified as 2011-NCIS 700B, is attached as Exhibit C ("MPCI Basic Provisions").

14. The MPCI Basic Provisions specifically preempt any conflicting North Carolina state laws, mandating in ¶31 ("*Applicability of State and Local Statutes*") that:

> If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy."

15. MPCI Basic Provisions ¶29 ("Assignment of Indemnity"), subparagraph (a) permits a policyholder to assign the right to an indemnity to a creditor or other person:

> (a) You may assign your right to an indemnity for the crop year only to creditors or other persons to whom you have a financial debt or other pecuniary obligation. …

16. MPCI Basic Provisions ¶29(b) permits a policyholder to assign his rights to more than one creditor or person:

> All assignments must be on our form and must be provided to us. Each assignment form may contain more than one creditor or other person to whom you have a financial debt or other pecuniary obligation.

4

17. MPCI Basic Provisions ¶29(a) states that a policyholder "may assign [his] right to an indemnity for the crop year only to creditors or other persons to whom [he has] a financial debt or other pecuniary obligation."

18. Kilpatrick had a financial debt or other pecuniary obligation to Helena Chemical Company in 2016.

19. Kilpatrick executed an Assignment of Indemnity form on April 11, 2016 to assign to Helena Chemical Company the right and interest of any indemnity payments that may be payable under the policy for certain crops, including Craven County Corn, Soybean, and Flue Cured Tobacco crops. That Assignment of Indemnity form is attached as Exhibit D.

20. Kilpatrick also had a financial debt or other pecuniary obligation to The Support Center in 2016.

21. Kilpatrick executed an Assignment of Indemnity form on July 22, 2016 to assign to The Support Center the right and interest of any indemnity payments that may be payable under the policy for certain crops, including Craven County Corn, Soybean, and Flue Cured Tobacco crops. That Assignment of Indemnity form is attached as Exhibit E.

22. Through those forms (Exhibits D and E), Kilpatrick assigned the right and interest of any indemnity payments payable under the 2016 policy for his Craven County Corn, Soybean, and Flue Cured Tobacco crops to both Helena Chemical Company and The Support Center.

23. Great American entered the Assignment of Indemnity forms for Helena Chemical Company and The Support Center into its computer system.

24. The MPCI terms required Great American to provide coverage for various losses to crops and revenues for the specified policy period.

25. Great American fulfilled its obligations under the terms of the MPCI policy, providing Defendant with federally-reinsured coverage against specified losses for the duration of the policy period.

26. Kilpatrick submitted claims under his policy, and Great American determined that indemnity payments were due for his Craven County Corn, Soybean, and Flue Cured Tobacco claims.

27. Great American issued computer-generated Proofs of Loss and checks for each of Kilpatrick's three Craven County claims (for each of his Corn, Soybean, and Flue Cured Tobacco claims), in January 2017 and February 2017. Images of the Proofs of Loss and check images are attached as Exhibit F.

28. Great American's computer systems generated Proof of Loss forms (one for each crop claim, for a total of three) that included the printed names of both assignees (Helena Chemical Company and The Support Center) on the Proofs of Loss.

29. Great American's computer system generated checks as payment for each of the three crop claims, but only the names of Dietrich Kilpatrick and The Support Center printed on the checks as payees.

30. The computer-printed checks say "Pay to the Order of: Dietrich Kilpatrick AND The Support Center."

31. Great American was not aware that the printed checks did not include "Helena Chemical Company" as a payee.

6
Case 4:19-cv-00037-BO    Document 1    Filed 03/13/19    Page 6 of 16

32. Great American's standard business practice is to distribute a Proof of Loss form and the corresponding indemnity check in the same mailing, which it generally accomplishes by sending the form and check to the insured's crop insurance agent for distribution to the insured.

33. Great American included the Proof of Loss forms that listed Helena Chemical Company as one of the assignees with the indemnity checks in the envelopes to be sent to Kilpatrick.

34. Kilpatrick endorsed each of the three claim checks, while The Support Center endorsed two of them, and the checks were negotiated.

35. Great American paid the indemnity amounts that are due under Policy No. 1091266 for Kilpatrick's Corn, Soybean, and Flue Cured Tobacco claims when it issued the checks for those claims in January 2017 and February 2017 (attached as Exhibit F).

36. Great American paid or credited indemnities totaling $182,292 under Policy No. 2016-NC-1091266 in the following amounts: $62,731 for the Corn claim, $64,573 for the Soybean claim (comprised of a $41,789 check and a $22,784 credit), and $54,988 for the Flue-Cured Tobacco claim.

37. Kilpatrick was indebted to Helena Chemical Company in the amount of $135,869.78 at the time the three checks issued.

38. Helena Chemical Company retained counsel regarding the assignment and insurance proceeds in issue.

39. Helena Chemical Company demanded payment through its counsel from Great American after Dietrich Kilpatrick did not tender the indemnity funds to it in accordance with his assignment.

40. Helena Chemical Company stated through its counsel that it would "consider its options" under the assignment and applicable state law if Great American did not respond to its payment demand, which Great American understood to be a suit threat.

41. Great American then paid, to Kilpatrick's benefit, an additional $135,869.78 to Helena Chemical Company for Kilpatrick's claims under Policy No. 1091266.

42. Basic Provisions Section 29(c)(2) states that:

> **29. Assignment of Indemnity.**
> …
> (c) … Under no circumstances will we be liable:
> …
> (2) To pay to all lienholders or other persons to whom you have a financial debt or other pecuniary obligation any amount greater than the total amount of indemnity owed under the policy.

43. Great American notified Kilpatrick on April 17, 2017 that it had determined that an overpayment in the amount of $135,869.78 was paid and that the overpaid indemnity in the amount of amount of $135,869.78 must be returned to Great American. Great American's April 17, 2017 letter is attached as Exhibit G.

44. Kilpatrick did not object to the determinations in that letter, nor did he contest or appeal them.

45. Sections 20(a) and (b) of the MPCI Basic Provisions mandate that Kilpatrick must initiate arbitration within one year if he does not agree with any determination Great American made, and that judicial review is not available if he does not initiate that process within one year of the date that Great American rendered the determination:

> **20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
>   (a) If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), …
>   (b) Regardless of whether mediation is elected:
>     (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
>     (2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

46. Kilpatrick did not initiate arbitration under his Policy No. 1091266 within one year after the overpayment determination or at any time thereafter, and the debt became incontestable after that year had passed.

47. Section 24(a) of the MPCI Basic Provisions mandates interest at the rate of 1.25% simple interest per calendar month on any amount owed to the company.

48. Section 24(b) of the MPCI Provisions mandates that for repayment of indemnities found not to be earned, interest will start to accrue on the date that notice is issued to the policyholder for collection of the unearned amount.

49. Interest began to accrue under the policy terms as early as April 17, 2017 at the rate of 1.25% simple interest per calendar month on any amount owed to the company.

50. Kilpatrick acknowledged and agreed that he owed Great American $135,869.78, and requested that Great American agree to a repayment plan.

51. Great American and Kilpatrick entered into a repayment agreement which required Kilpatrick to make periodic payments in varying amounts. That repayment plan agreement is attached as Exhibit H ("Repayment Plan Agreement").

52. Kilpatrick acknowledged that the principal balance due as of April 20, 2017 was $135,869.78 when he signed the Repayment Plan Agreement.

53. Kilpatrick made the first two scheduled payments on time, paying $500 on April 28, 2017 and another $500 on May 30, 2017.

54. After Kilpatrick made those two payments and Great American applied them to the principal amount due, and after the initial interest accrual under the payment plan, the total balance due as of June 1, 2017 was $136,561.78.

55. Defendant Kilpatrick failed to pay the next payment that was due under the Repayment Plan Agreement on June 30, 2017, which was $15,000, nor has he made any payments since then.

56. Under the terms of the Repayment Plan Agreement, when that payment was not received in Great American's office on or before its due date, Kilpatrick was in default, and the entire balance became due immediately.

57. The interest due for each of the following months, through December 2018, which Great American has rounded down (truncated) to whole dollar amounts, is as follows:

| Month(s) | Principal Balance | Interest Due |
|---|---|---|
| May 2017 | $135,369.78 | $1,692 |
| June 2017 | $134,869.78 | $1,685 |
| July 2017 – December 2018 (18 months) | $134,869.78 | $30,330 |
| Total: | $134,869.78 | $33,707 |

58. Defendant Kilpatrick is indebted to Great American in the principal amount of $134,869.78, plus $33,707 in prior accrued interest through December 31, 2018, plus $1,685 in interest per month beginning on January 1, 2019, and he refuses to reimburse Great American for those overpaid funds.

59. The outstanding balance remains after amicable demand.

## COUNT I.    BREACH OF CONTRACT:
## REPAYMENT PLAN AGREEMENT DEFAULT

60. Great American incorporates by reference all facts and allegations previously stated hereinabove.

61. Kilpatrick entered into a Repayment Plan Agreement with Great American on April 24, 2017 regarding the amount due on his overpaid claim in the principal amount of $135,869.78.

62. Kilpatrick did not make the scheduled payments that were due on June 30, 2017 and thereafter.

63. Defendant Kilpatrick has defaulted in payment of the Repayment Plan Agreement and has breached that contract by refusing to pay the amount due.

64. There is presently due and owing to the plaintiff:

   a) an overpayment principal balance in the amount of $134,869.78, plus

11

b) $33,707 in prior accrued interest through December 31, 2018, plus

c) interest beginning on January 1, 2019 at the rate of 1.25 percent simple interest per calendar month on the $134,869.78 overpayment balance ($1,685 per month).

## COUNT II. BREACH OF CONTRACT: CONTRACTUAL REIMBURSEMENT

65. In the alternative to Plaintiff's claims under the Repayment Plan Agreement, the policy contract between Plaintiff and Defendant requires repayment of the principal amount of the overpayment, plus contractually-required interest.

66. Great American incorporates by reference all facts and allegations previously stated in Paragraphs 1-59 hereinabove.

67. 7 CFR §457.7 mandates that " [n]o indemnity shall be paid unless the insured complies with all terms and conditions of the contract…"

68. Defendant Kilpatrick has not complied with all terms and conditions of the MPCI policy contract with regard to the overpayment.

69. Great American determined on April 17, 2017 that Kilpatrick received an overpaid indemnity and that it was due $135,869.78 from Kilpatrick.

70. Kilpatrick did not initiate arbitration to dispute Great American's April 17, 2017 overpayment determination, and that determination became incontestable as of April 17, 2018.

71. Defendant Kilpatrick owes Great American:

a) an overpayment principal balance in the amount of $134,869.78, plus

12
Case 4:19-cv-00037-BO    Document 1    Filed 03/13/19    Page 12 of 16

b) $33,707 in prior accrued interest through December 31, 2018, plus

c) interest beginning on January 1, 2019 at the rate of 1.25 percent simple interest per calendar month on the $134,869.78 overpayment balance ($1,685 per month).

## COUNT III – REQUEST FOR CONTRACTUAL ATTORNEY FEES

72. Great American incorporates by reference all facts and allegations previously stated in Paragraphs 1-59 hereinabove.

73. Section 24(d) of the MPCI Basic Provisions requires the insured to pay all costs of collection, including attorney fees, if an attorney is employed to assist in collection.

74. Defendant Kilpatrick has refused to pay the overpayment principal balance due and interest thereon and Great American has employed an attorney to assist in collection.

75. Pursuant to MPCI Basic Provisions ¶24(d), Defendant has agreed to pay Plaintiff's attorney fees if Plaintiff must employ an attorney to assist in collection, which Plaintiff has had to do.

76. Defendant Kilpatrick therefore owes Great American the attorney fees it has incurred related to collection of the overpayment balance due.

## COUNT IV. ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT

77. In the alternative to Plaintiff's Breach of Contract claims in Counts I and II, the equitable doctrine of unjust enrichment requires repayment of the principal amount of the overpayment, plus interest.

78. Great American incorporates by reference all facts and allegations previously stated in Paragraphs 1-59 hereinabove.

79. Kilpatrick owed a financial debt or other pecuniary obligation to Helena Chemical Company.

80. Great American conferred a benefit upon Defendant Kilpatrick by paying to Helena Chemical Company as assignee indemnity payments in the amount of $135,869.78 under Policy No. 1091266.

81. Helena Chemical Company applied Great American's overpayment in the amount of $135,869.78 towards Kilpatrick's debt.

82. Defendant Kilpatrick has received the benefit of the overpayment in the amount of $135,869.78.

83. Defendant Kilpatrick has been unjustly enriched by the overpayment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Great American prays for the following relief against Defendant Kilpatrick:

1. For Count I, a money judgment for all of the following:

    a) an overpayment principal balance in the amount of $134,869.78, plus

    b) $33,707 in prior accrued interest through December 31, 2018, plus

      c)   interest beginning on January 1, 2019 at the rate of 1.25 percent simple interest per calendar month on the $134,869.78 overpayment balance ($1,685 per month).

2. For Count II (in the alternative to Count I), a money judgment for the following:

      a)   an overpayment principal balance in the amount of $134,869.78, plus

      b)   $33,707 in prior accrued interest through December 31, 2018, plus

      c)   interest beginning on January 1, 2019 at the rate of 1.25 percent simple interest per calendar month on the $134,869.78 overpayment balance ($1,685 per month).

3. For Count III, Great American requests that the Court award it the reasonable attorney fees that it has incurred in this suit.

4. For Count IV (in the alternative to Counts I and II), Great American requests that the Court find that Defendant Kilpatrick has been unjustly enriched and require him to compensate and reimburse Great American for the $134,869.78 in damages it has incurred by virtue of that unjust enrichment, plus interest on that amount.

5. An award to Great American of such other relief that the Court deems just and proper.

      Dated:   March 13, 2019.

Respectfully submitted,

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr.
(Ohio Bar No. 0073531)
**SANDERS & ASSOCIATES, L.P.A.**
*(Notice of Special Appearance to Be Filed)*
8041 Hosbrook Road, Suite 315
Cincinnati, Ohio 45236

Phone: 513-229-8080
Fax: 513-229-8081
TomJames@SandersLPA.com

*s/ Raymond E. Dunn, Jr.*
Raymond E. Dunn, Jr.
Dunn, Pittman, Skinner & Cushman PLLC
3230 Country Club Road
New Bern, NC 28562

Phone: (252) 649-0197
Fax: (252) 633-6669
Email: rdunn@dunnpittman.com
North Carolina State Bar No. 8739
Local Civil Rule 83.1(d) Counsel for Great American

Attorneys for Plaintiff
Great American Insurance Company